IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| WILLIAM MOGCK, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED WHOLESALE MORTGAGE, LLC,<br><br>Defendant. | Case No. 2:26-cv-10733<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1.  Plaintiff William Mogck ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

2.  Plaintiff is on the national do-not-call registry.

3.  Despite that, United Wholesale Mortgage ("Defendant"), through brokers acting on its behalf and as agents of Defendant, sent numerous text messages to Plaintiff's cellular telephone number to encourage the purchase of United Wholesale Mortgage's goods and services, without prior express invitation or permission.

4.  Plaintiff repeatedly instructed Defendant's brokers to stop calling, but he continued to receive text messages from Defendant's brokers promoting

1

246954

Defendant's goods and services.

5. Plaintiff never consented to receive the calls. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers en masse, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

6. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## The Parties

7. Plaintiff William Mogck is an individual residing in Dripping Springs, TX.

8. United Wholesale Mortgage ("UWM" or "Defendant") is a limited liability company organized under Michigan law with its headquarters and principal place of business in Pontiac, Michigan. UWM is a mortgage lender and bills itself as the number one mortgage lender in the nation.

## Jurisdiction And Venue

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012).

10. The events described herein relate to unlawful telemarketing calls to Plaintiff's residential telephone number.

11. This Court has personal jurisdiction over Defendant because Defendant resides in this district.

12. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District within the meaning of 28 U.S.C. § 1391(c)(2).

## The Telephone Consumer Protection Act

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

## The TCPA Prohibits Calling Numbers after a Stop Request and Prohibits Calling Numbers on the National Do Not Call Registry

14. Section 227(c) of the TCPA requires the Federal Communications Commission ("FCC") to implement regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15. Pursuant to that instruction, the FCC has implemented the following rule: "Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request." 47 C.F.R. § 64.1200(d)(3).

246954

16. The FCC also created the National Do-Not-Call Registry, which allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

17. A telephone number's registration on the Do-Not-Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

18. The TCPA and implementing regulations prohibit initiating telephone solicitations to any residential telephone subscriber's telephone number that is registered on the National Do-Not-Call Registry. *See* 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c)(5).

19. The TCPA and implementing regulations provide a private cause of action to persons who receive more than one call "by or on behalf of the same entity" within any 12-month period in violation of these regulations. *See* 47 U.S.C. § 227(c)(5).

**Sellers like United Wholesale Mortgage Are Liable under the TCPA**

20. The FCC has held that a company on whose behalf a telephone call is made bears the responsibility for any TCPA violations. *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (¶ 10) (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

21. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts-out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re DISH Network, LLC*, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013).

22. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *In re DISH Network, LLC*, 28 FCC Rcd at 6586 (¶ 34).

23. The FCC has confirmed that sellers such as UWM may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

## DEFENDANT'S RELATIONSHIP WITH ITS BROKER AGENTS

24. Defendant engages mortgage brokers to sell its mortgage products via the phone.

25. Defendant prohibits its brokers from submitting loans to Defendant's major competitors.

26. As a result, a study in 2023 found that a large portion of Defendant's brokers were submitting virtually all (99% or more) of their loans to Defendant.

27. Defendant provides a 5 week comprehensive training program to brokers, that, among other things, trains its brokers on how sell via the phone.

28. As part of that training, Defendant requires brokers to train for 3 days in-person and on-site at Defendant's headquarters in Pontiac, Michigan.

29. Defendant also leads weekly sales meetings with its brokers.

30. Defendant provides its brokers with various tools and resources, which the brokers use to make sales.

31. These tools and resources include,

    a) Loan Lab and Income Calculator software that achieves UWM's underwriting objectives and allows brokers to experiment with loan adjustments and restructuring before finalizing a loan

    b) Lead Pipeline software that alerts brokers when they should send text messages to potential leads.

    c) Action IQ software that connects to Lead Pipeline and provides task

6

246954

       management tools to the broker

   d)   Blink+, which is a customer facing portal for the customers to complete applications and provide info to both the broker and UWM. Blink+ also contains loan origination software, and tools for managing leads.

   e)   Contacts Pipeline software, which manages contact information for UWM clients.

   f)   ChatUWMAssist, which allows Brokers to communicate with UWM's AI service to assist in the sales process.

32. Through these tools, Defendant controls and manages the business infrastructure for the broker's activities.

33. Defendant tracks and ranks its broker's performance, and assigns PRO points to its brokers based on the number of loans they submit to UWM, how frequently the broker's use UWM's tools, and how frequently the brokers attend meetings and trainings.

34. Defendant publishes a directory of its brokers at a consumer facing website, mortgagematchup.com, which allows borrowers to connect with local UWM brokers in their area.

35. The more PRO points a broker has, the more visible they are on mortgagematchup.com.

36. In addition PRO points give brokers access to more competitive loan

rates than brokers with lower scores, faster underwriting times, direct access to senior support, and marketing credits, whereby UWM runs google ads for the brokers to drive leads to the broker.

## THE UNLAWFUL CONDUCT

37. Plaintiff registered his cellular telephone number (xxx) xxx-9815 on the National Do Not Call Registry on October 4, 2022.

38. Plaintiff uses his cellular telephone number only for personal, non-commercial purposes, including inside his home.

39. Between September 16, 2025 and the present, Defendant's brokers have sent Plaintiff numerous text messages to encourage Plaintiff to obtain a loan from UWM.

40. For instance, on September 16, 2025, one of Defendant's brokers sent Plaintiff the following message text message:

> "William, Sam here.  A new VA program has rates mid 4-5% range.  What's your current rate?  I'll run the numbers to see if you can save.
> -Sam from UWM
> Reply STOP to unsubscribe"

41. Plaintiff replied "stop texting me."

42. Likewise, on January 14, 2026, one of Defendant's brokers sent Plaintiff the following text message:

> "William, Eric Here.  You are eligible for a rate reduction with an VA Streamline.  What is your rate?  Pricing now through the VA.
> -Eric from UWM Partner"

8

246954

43. Later that day, the same broker sent the following message:

> "We have been notified to reach out with us being a part of a specific VA campaign here. You are eligible for rates in the 4-5s! Have 5 minutes?
> -Eric from UWM Partner"

44. Plaintiff replied "Do not contact."

45. Likewise, on January 20, 2026, one of Defendant's brokers sent Plaintiff the following text message:

> "William, Matt here. You are eligible for a rate reduction with an VA Streamline. What is your rate? Pricing now through the VA."

46. Later that day, the same broker sent the following message:

> "We have been notified to reach out with us being a part of a specific VA campaign here. You are eligible for rates in the 4-5s! Have 5 minutes?"

47. Plaintiff replied, "What company" and the broker replied "What is your current interest rate and your credit score? Pricing now for you"

48. Again Plaintiff replied "What company" and the broker replied "What is your current interest rate with the VA so I can make sure we pass the VA Savings test? Pricing now for you."

49. On January 21, 2026, Plaintiff replied "What company are you from and the broker replied "UWM – Largest lender in the US. Do you have a quick 2 minutes?"

50. The broker followed up with "what is your current interest rate and your

9

246954

credit score? Pricing now for you" and Plaintiff replied "Do not contact."

51. On February 24, 2026, another one of Defendant's brokers sent Plaintiff the following message:

> "William, Shawn here. You are eligible for a rate reduction with an VA Streamline. What is your rate? Pricing now through the VA.
> -Shawn from UWM Partner
> Reply STOP to unsubscribe"

52. Later that day, the same broker sent followed up with the following message:

> "You will love how this all works out! We will not waste your time, can you take a quick call now?
> -Shawn from UWM Partner
> Reply STOP to unsubscribe"

53. On February 25, 2026, the same broker followed up:

> "We understand that you are paying more than you should be right now, we can solve and lower that for you! Do you have a quick 5 minutes?
> Reply STOP to unsubscribe"

54. The same broker sent additional messages on February 26, 2026, February 27, 2026, and March 2, 2026.

55. At no time did Plaintiff sign a written agreement with UWM, any UWM broker, or anyone else containing Plaintiff's telephone number (xxx) xxx-9815 and stating Plaintiff agrees to be contacted on that number by UWM or anyone acting on behalf of UWM.

56. Defendant's actions injured Plaintiff by invading his privacy, wasting

10

246954

his time, and interfering with the use of his telephone.

## CLASS ALLEGATIONS

57. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the following classes of all other persons or entities similarly situated throughout the United States.

58. The classes of persons Plaintiff proposes to represent are tentatively defined, subject to amendment, as follows:

> **Do Not Call Registry Class**
> Each person in the United States: (1) to whose non-commercial telephone number Defendant or anyone acting on Defendant's behalf initiated two or more telephone solicitations during a 12-month period; (2) promoting Defendant's service for sale (3) where the person's telephone number was registered on the National Do Not Call Registry more than thirty-one days before the telephone solicitations; (4) at any time from four years before the date this Complaint was filed through trial.
>
> **Stop Request Class**
> Each person in the United States to whose (1) non-commercial telephone number (2) Defendant or anyone acting on Defendant's behalf initiated two or more telephone solicitations during a 12-month period (3) promoting Defendant's services for sale (4) at least 7 days after receipt of a do not call request (5) at any time from four years before the date this Complaint was filed through trial.

59. Upon information and belief, the members of the classes received at least two telephone solicitations without having given prior express invitation or permission.

60. The classes defined above are identifiable through phone records, phone

11

246954

number databases, and business records.

61.     The potential class members number at least in the thousands, since telemarketing campaigns make calls to hundreds or thousands of individuals per day. Individual joinder of these persons is impracticable.

62.     Plaintiff is a member of the proposed classes.

63.     There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a)     Whether Defendant violated the TCPA;

    b)     Whether the calls constitute telephone solicitations;

    c)     Whether the calls were for purposes of encouraging the purchase or rental of, or investment in, UWM's goods or services;

    d)     Whether Defendant and/or any third-parties who placed the calls on Defendant's behalf instituted procedures for maintaining an internal do-not-call list of persons who requested not to receive telemarketing calls by or on behalf of that person or entity;

    e)     Whether the conduct of Defendant and/or any third-parties who placed the calls was knowing and/or willful;

    f)     Whether any third-parties who placed the calls are agents of UWM;

    g)     Whether UWM ratified the conduct of any third-parties who placed the calls;

   h)  Whether Defendant is liable for the calls and/or other acts and omissions of any third-parties who placed the calls; and

   i)  Whether the Plaintiff and the class members are entitled to statutory damages and/or injunctive relief because of Defendant's actions.

64. Plaintiff's claims are typical of the claims of class members.  Plaintiff's claims, like the claims of the classes, arise out of the same common course of conduct by Defendant and its agents, and are based on the same legal and remedial theories.

65. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and she is represented by counsel skilled and experienced in class actions.

66. Common questions of law and fact predominate over questions affecting only individual class members.  The only individual question concerns identification of class members, which are readily identifiable from records maintained by Defendant, its agents, the National Do Not Call Registry, and others.

67. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.

246954

There will be no significant difficulty in the management of this case as a class action.

68. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

69. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the classes, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the classes as a whole. Prosecution of separate actions by individual members of the putative lasses, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the classes that would establish incompatible standards of conduct.

## COUNT I
### Solicitations to Numbers on the National Do Not Call Registry

70. Plaintiff and the class members re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

71. It is a violation of the TCPA for any person or entity to initiate any telephone solicitation to a residential or cellular number registered on the National Do Not Call Registry. *See* 47 C.F.R. § 64.1200(c)(2); *id.* at § 64.1200(e).

72. Defendant and/or others acting on Defendant's behalf made two or more telephone solicitation calls to Plaintiff's and the putative class members' residential telephone numbers that were registered on the National Do Not Call Registry for more than 31 days prior to the calls.

73. Plaintiff and members of the putative Class have received more than one telephone call made by or on behalf of Defendant within a twelve (12) month period in violation of the regulations set forth in 47 C.F.R. § 64.1200.

74. As a result of Defendant's conduct and pursuant to 47 U.S.C. § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to at least $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

## COUNT TWO
### Solicitations After a Stop Request

75. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

76. Defendant violated 47 U.S.C. § 227(c) and the FCC's regulation at 47 C.F.R. § 64.1200(d)(3) by failing to institute procedures necessary to honor do-not-call requests and by placing telemarketing calls to Plaintiff and the class's residential phone numbers after receipt of a do-not-call request.

77. As a result of Defendant's violations, Plaintiff and the Class are entitled to an award of $500 in statutory damages for each and every violation of the statute, or up to $1,500 in statutory damages for each willfully or knowingly made violation, pursuant to 47 U.S.C. § 227(b)(3).

**WHEREFORE**, Plaintiff William Mogck, on behalf of himself and the other members of the classes, prays for the following relief:

    a) A declaration that Defendant's practices described herein violate

      the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b) An injunction prohibiting Defendant from initiating, or accepting leads generated by others initiating, telephone solicitations to persons who have registered their telephone numbers with the National Do Not Call Registry;

c) An award of actual damages;

d) An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

e) An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that willfully and/or knowingly violated the TCPA;

f) An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

Dated: March 3, 2026

                      Respectfully Submitted,

                      WILLIAM MOGCK, individually and on behalf of all others similarly situated,

                      By: /s/ Timothy J. Sostrin

                      Timothy J. Sostrin
                      Keith J. Keogh
                      KEOGH LAW, LTD.
                      55 W. Monroe Street, Suite 3390
                      Chicago, Illinois 60603
                      (312) 726-1092
                      (312) 726-1093 (fax)
                      keith@keoghlaw.com
                      tsostrin@keoghlaw.com

                      ***Attorneys for Plaintiff and the Putative Class***

246954